## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

SHEILA JEAN ANDERSON,

     *Plaintiff,*

v.                          CASE NO. 11-CV-11077

COMMISSIONER OF          DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E. BINDER

     *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB") benefits, and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 17.)

Plaintiff was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 31.) Plaintiff's past employment includes work as a quality assembler for

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

an automobile parts manufacturer for eight years, a cashier/food preparation worker for one year, and a temporary worker for an automobile dealer for one year. (Tr. at 120.) Plaintiff filed the instant claims on August 7, 2006, alleging that she became unable to work on October 6, 2005. (Tr. at 90, 95.) The claims were denied at the initial administrative stages. (Tr. at 41.) In denying Plaintiff's claims, the Commissioner considered muscle/ligament disorder and fascia and other unspecified arthropathies as possible bases for disability. (*Id.*) On December 2, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Deborah A. Arnold, who considered the application for benefits *de novo*. (Tr. at 15-26, 27-40.) In a decision dated May 26, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) Plaintiff requested a review of this decision on June 7, 2009. (Tr. at 11-14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 14, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On March 15, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner

has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (*citing Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes

3

that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing Mullen, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs*., 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec*., 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.,* 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs*., 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec*., 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse*, 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

5

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since October 6, 2005, the alleged onset date. (Tr. at 20.) At step two, the ALJ found that Plaintiff's adhesive capsulitis of the right shoulder and diabetes mellitus were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 20-21.) At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a food preparation worker. (Tr. at 22.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 21-22.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

### E.  Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff injured her right hand and arm while on the job in an automobile assembly plant in 2004. (Tr. at 37-38.) Plaintiff was treated for this injury by James Weir, M.D., from July 2005 through September 2006. (Tr. at 176-86; 224-27.)

An MRI of Plaintiff's right shoulder taken on July 21, 2005, showed a rotator cuff tear, i.e., a "small full-thickness tear at the insertion point of the supraspinatus tendon." (Tr. at 168, 186.) On October 6, 2005, Dr. Weir performed an arthroscopy of Plaintiff's right shoulder with acromioplasty and rotator cuff repair. (Tr. at 160-61, 164-67.) A post-operative x-ray showed normal post-operative changes. (Tr. at 163.)

On April 3, 2006, Dr. Weir noted that although Plaintiff was "doing her best at physical therapy," she had only "some increased motion but still has decreased active and passive range of motion to the right shoulder." (Tr. at 176.) Therefore, on June 2, 2006, Plaintiff's right shoulder was manipulated under anesthesia by Dr. Weir. (Tr. at 157, 180-83, 218.) On June 21, 2006, Dr. Weir noted that Plaintiff's "range of motion is coming along quite nicely" and that Plaintiff "has done a very good job with her therapy." (Tr. at 176, 217.)

6

On August 28, 2006, Plaintiff sought treatment for a wound on her left calf from a mosquito bite that would not heal; the wound was "debrided" and she was give antibiotic therapy. (Tr. at 153-55.)

On August 30, 2006, Plaintiff indicated to Dr. Weir that her "shoulder still feels a little tight for her" and Dr. Weir explained that the "only other option would involve an arthroscopically lysis of adhesions and re-manipulation but we would sure like to avoid that if we could . . . ." (*Id.*) On January 10, February 24, April 4, June 27, and September 5, 2006, Dr. Weir completed disability forms for Plaintiff's employer indicating disability beginning on October 6, 2005. (Tr. at 191-95.) On January 24, 2007, Dr. Weir noted that Plaintiff's "shoulder range of motion is quite good with coaxing but she has trouble with full abduction, internal and external rotation." (Tr. at 223.) On February 7, 2007, Dr. Weir noted that a recent MRI "shows no sign of any rotator cuff tear or pathology within the shoulder." (Tr. at 225.) On June 11, 2007, Dr. Weir noted that "x-rays today [] show no signs of any arthritic changes happening" and that Plaintiff "has had MRIs that show no new tears in the rotator cuff." (Tr. at 225.) Dr. Weir also noted that Plaintiff had "an adhesive capsulitis that goes along with her diabetes." (*Id.*) Dr. Weir indicated that Plaintiff "states she can't work so we will put her off work at this point." (*Id.*) Images taken on September 7, 2007, showed "[t]endinosis of the supraspinatus tendon" but "[n]o tear [was] seen in the rotator cuff." (Tr. at 253.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed on October 9, 2008. (Tr. at 196-203.) The assessment concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and was limited in her right upper extremity with respect to pushing and pulling. (Tr. at 197.) The assessment also found that Plaintiff should never climb ladders, ropes or scaffolds and should only occasionally crawl. (Tr. at 198.) Plaintiff was found to be limited to occasional overhead reaching and frequent handling with her right upper extremity. (Tr. at 199.) There were no visual or communicative limitations established. (Tr. at 199-200.) The only environmental limitation established was to avoid all exposure to vibration. (Tr. at 200.) The

assessment noted that Plaintiff was "able to tend to most daily activities independently with some modifications made for her condition." (Tr. at 201.)

Plaintiff indicated in her Daily Activity Report that she is able to handle her personal care needs, but that it is difficult to use hooks or zippers. (Tr. at 128.) She also stated that she prepares meals, does laundry, washes dishes, sweeps the floors, cleans, goes outside on a daily basis, walks, drives a car, rides in a car, shops in stores for an hour at a time, manages her finances, attends church, and talks with others. (Tr. at 129-31.)

Plaintiff testified at the administrative hearing that she has a driver's license and still drives, lives in a house with her husband, and receives workers compensation for the injury to her right arm in the amount of "$671.00 a week." (Tr. at 33.) Plaintiff further testified that she is right-handed and cannot reach, vacuum or sweep with her right arm, but that she does try to take care of household chores even though it takes her "a long time." (*Id.*) Plaintiff indicated that she has done some physical therapy to "learn how to re-print and to try to re-write," but that she is unable to unbutton or unhook items of clothing. (Tr. at 34.) Plaintiff stated that she can use her right arm, for instance, to wash her hair if she bends down but that she cannot lift or reach up because of weakness and because her arm "freezes up." (*Id.*)

Plaintiff also testified that she has had diabetes for 25 years and that she takes several insulin shots per day. (Tr. at 35.) Plaintiff stated that she has neuropathy in her legs and feet and that because of it she can only be on her feet for "between 20 and 30 minutes" at a time before she needs to sit down due to pain and exhaustion. (Tr. at 25-36.) Plaintiff testified that she goes with her husband to grocery shop. (Tr. at 36.) Plaintiff also stated that she takes over-the-counter pain medicine and that she cannot sleep because "[t]here's not a comfortable position" and her "arms feel like they're going to fall off." (Tr. at 36-37.) Plaintiff indicated that she "do[es]n't have an energy level" and that she naps for "a couple hours" on a daily basis. (Tr. at 37.) Plaintiff clarified that although her injury was in 2004, she did not undergo surgery on her arm until 2005. (Tr. at 37-38.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background with the limitations of "no lifting over 20 pounds, no overhead reaching with the right upper extremity and only occasional pushing or pulling of the right upper extremity." (Tr. at 38-39.) The VE responded that such a person could still perform the job of food preparation worker. (Tr. at 39.) The ALJ then asked whether that conclusion would change if the lifting restriction were limited to ten pounds, and the VE testified that such a restriction would eliminate all past work.

### F.   Analysis and Conclusions

### 1.   Legal Standards

The ALJ found that Plaintiff was able to perform her past relevant work as a food preparation worker. (Tr. at 22.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds

credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 20-22.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred as a matter of law by concluding that Ms. Anderson could return to her past relevant work as a food preparation worker." (Doc. 12 at 6-11.)  I suggest that the ALJ's RFC findings were supported by substantial evidence and should not be disturbed.

Although Plaintiff undoubtedly was injured, surgery to repair her torn rotator cuff was successful. (Tr. at 160-61, 163, 164-67.) Post-operative motion difficulties were addressed by manipulation under anesthesia by Dr. Weir, who noted that after such manipulation, Plaintiff's

"range of motion [was] coming along quite nicely." (Tr. at 157, 176, 180-83, 217, 218.) As of January 2007, Dr. Weir noted that Plaintiff's "shoulder range of motion is quite good with coaxing" (Tr. at 223) and that her recent MRI "show[ed] no sign of any rotator cuff tear or pathology within the shoulder." (Tr. at 225.) In addition, in June 2007, Dr. Weir noted that "x-rays today [] show no signs of any arthritic changes happening" and that Plaintiff's MRIs "show no new tears in the rotator cuff." (Tr. at 225.) I therefore suggest that the ALJ's RFC findings are not inconsistent with Dr. Weir's findings. In addition, the ALJ's conclusion is supported by the RFC assessment. (Tr. at 196-203.)

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own statements that she prepares meals, does laundry, washes dishes, sweeps the floors, cleans, goes outside on a daily basis, walks, drives a car, rides in a car, shops in stores for an hour at a time, manages her finances, attends church, and talks with others. (Tr. at 33-36, 129-31.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are

advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.*, 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ 𝕮harles 𝕰 𝕭inder

CHARLES E. BINDER

Dated: May 7, 2012                    United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: May 7, 2012                    By    s/Patricia T. Morris
                                            Law Clerk to Magistrate Judge Binder